CUTTS and another, Respondents, vs. DEPARTMENT OF
PUBLIC WELFARE, Appellant.*

*June 6—June 26, 1957.*

* Motion for rehearing denied, without costs, on September
10, 1957.

410

For the appellant there was a brief by the *Attorney General* and *Roy G. Tulane,* assistant attorney general, and oral argument by *Mr. Tulane.*

For the respondents there were briefs and oral argument by *A. D. Sutherland* of Fond du Lac.

CURRIE, J. Before the trial court the plaintiffs contended that ch. 404, Laws of 1955, was invalid on three grounds, viz. :

(1) That sec. 10, art. VIII, Const., prohibits state forest lands from being used for any other than forestry purposes, and therefore such ch. 404, Laws of 1955, contravened such constitutional prohibition.

(2) That the empowering of the state building commission with the authority to select the site of the new state boys' school constituted an unconstitutional delegation of legislative power.

(3) That the Kettle Moraine state forest is a park which may be conveyed only pursuant to sec. 3a, art. XI, Const., and that the conveyance authorized by such statute to be made to the defendant department failed to comply with the requirements of such constitutional provision.

The trial court in its memorandum opinion decided the first two issues adversely to the contentions advanced by the plaintiffs, but determined that the attacked statute was invalid on the ground that the conveyance of the site area by the conservation commission to the Department of Public Welfare contravened sec. 3a, art. XI of the constitution.

Sec. 3a, art. XI, Const.,[1] the so-called "park amendment," was adopted in 1912. This amendment empowers the state, and any of its cities, to acquire property for park purposes, among others enumerated therein. It also authorizes the sale of any excess lands not necessary for the purpose acquired, provided that the conveyance contains reservations concerning the future use of the conveyed lands which will protect

---

[1] Sec. 3a, art. XI, Const., reads: "The state or any of its cities may acquire by gift, purchase, or condemnation lands for establishing, laying out, widening, enlarging, extending, and maintaining memorial grounds, streets, squares, parkways, boulevards, parks, playgrounds, sites for public buildings, and reservations in and about and along and leading to any or all of the same; and after the establishment, layout, and completion of such improvements, may convey any such real estate thus acquired and not necessary for such improvements, with reservations concerning the future use and occupation of such real estate, so as to protect such public works and improvements, and their environs, and to preserve the view, appearance, light, air, and usefulness of such public works."

the remaining park area and preserve its usefulness. It was because ch. 404, Laws of 1955, authorized the conservation commission to convey the 476.10 acres of land without imposing such required restrictions that the trial court held such statute invalid.

In arriving at such conclusion the trial court determined that upon the allegations of the complaint it was plainly established that the Kettle Moraine state forest had been used by the state as a park area, as well as for forestry purposes, so that sec. 3a, art. XI, Const., was applicable.

We are unable to sustain the determination of the trial court that the facts alleged in the complaint establish a violation of sec. 3a, art. XI, Const. This is because ch. 404, Laws of 1955, did not authorize a conveyance by the state to any other entity or person, but merely provided for a transfer from one department of the state to another. Under the conveyance to the defendant Department of Public Welfare the land still remains state-owned property the same as it was before. We construe sec. 3a, art. XI, in so far as applicable to the conveyance of excess state-owned lands, as operative only in a situation where title is transferred out of the state to some other entity or person. That is not the situation here. Therefore, we determine that ch. 404, Laws of 1955, and the conveyance to the defendant department made pursuant thereto, in no way violate sec. 3a, art. XI.

The plaintiffs apparently have abandoned their contention, advanced below, that ch. 404, Laws of 1955, embodies an unconstitutional delegation of legislative power to the state building commission, because the two briefs of the plaintiffs on this appeal do not renew such contention. In any event we are in full accord with the determination of the trial court that only an administrative and not a legislative power was delegated to the state building commission with respect to selecting a site for the new state boys' school.

The plaintiffs have chosen to center their fire on this appeal upon their contention that ch. 404, Laws of 1955, violates sec. 10, art. VIII, Const. This section is entitled *"Internal improvements,"* and the first clause thereof provides, "The state shall never contract any debt for works of internal improvement, or be a party in carrying on such works." Such quoted prohibition was contained in the constitution as originally adopted in 1848. Sec. 10, art. VIII, has subsequently been amended from time to time. The particular amendment thereto relied upon by the plaintiffs is the "forestry amendment," adopted in 1924, reading as follows:

"Provided, that the state may appropriate moneys for the purpose of acquiring, *preserving,* and developing the forests of the state; but there shall not be appropriated under the authority of this section in any one year an amount to exceed two tenths of one mill of the taxable property of the state as determined by the last preceding state assessment." (Italics supplied.)

The plaintiffs urge that the word *"preserving"* in the above-quoted constitutional amendment imposes a restriction on the power of the legislature to devote lands acquired or developed for forestry purposes to some other incompatible purpose. It may be conceded that the use of state forest lands for the site of the state boys' school is incompatible with their use for forestry purposes.

However, the history underlying the enactment of such 1924 "forestry amendment" demonstrates that it was adopted in order to confer a grant of power upon the legislature, that previously had been denied to it by sec. 10, art. VIII, Const. Both the plaintiffs and the attorney general agree that such 1924 amendment was the direct result of this court's determination in *State ex rel. Owen v. Donald* (1915), 160 Wis. 21, 151 N. W. 331. It was therein held that the acquiring by the state of lands for a forest reserve, and the use of such lands to carry on forestry operations, constituted a work of

internal improvement, and, therefore, violated the prohibition of sec. 10, art. VIII.

In considering the question of whether this 1924 "forestry amendment" placed any restriction on the power of the legislature, as to the type of public use that might be made of state forest lands, it is well to keep in mind that the power of a state legislature, unlike that of the federal congress, is plenary in nature. This was well stated by Mr. Justice COLE in *Bushnell v. Beloit* (1860), 10 Wis. *195, *225, as follows:

"We suppose it to be a well-settled political principle that the constitution of the state is to be regarded not as a grant of power, but rather as a limitation upon the powers of the legislature, and that it is competent for the legislature to exercise all legislative power not forbidden by the constitution or delegated to the general government, or prohibited by the constitution of the United States."

Therefore, absent the original prohibition in sec. 10, art. VIII, Const., against engaging in works of "internal improvement," the legislature not only would have full power to establish state forests and engage in reforestation work on state-owned lands, but it would have the undoubted power to at any time devote state forest lands to some other legal but incompatible public use. While original sec. 10, art. VIII, prohibited the establishment of state forests, it in no way restricted the right of the legislature to use any state-owned lands as a site for a boys' school. This is because such a school is not a work of "internal improvement." *State ex rel. Owen v. Donald, supra,* at page 79; *Rippe v. Becker* (1894), 56 Minn. 100, 117, 57 N. W. 331. Therefore, if the effect of the 1924 "forestry amendment" was only to remove the then existing prohibition against the state establishing state forests, the prior existing power to devote any state lands to the purpose of a boys' school remained and extended to state forest lands.

The "forestry amendment" to sec. 10, art. VIII, Const., authorizes the legislature to expend public moneys, subject to the annual two tenths of one mill limitation, for three purposes. These are: (1) To acquire forests; (2) to preserve forests; and (3) to develop forests. The third power undoubtedly has reference to reforestation work. The second of these three enumerated powers is subject to two possible interpretations. One of these is that it is merely intended as a grant of legislative power. The word *"preserving"* is not synonymous with either "acquiring" or "developing." Furthermore, the power to expend funds to preserve forests is not necessarily restricted to those forests situated on state-owned lands, but may extend to forests on other lands so long as the expenditure is made for a public and not a private purpose. *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 207, 216, 60 N. W. (2d) 763. The other interpretation, and the one urged by the plaintiffs, is that, in addition to including a grant of power, it also embodies a restriction on power. The plaintiffs urge that it will be impossible for the legislature to preserve state forests, if, after disbursing state funds to acquire or develop the same, it be permitted to devote such forest lands to an incompatible public use.

The one of two possible constitutional constructions, which does not impose a restriction upon the plenary power of the legislature by implication, is usually preferable. This is especially true where there is no problem present of possible invasion by the legislature of the field of the executive or judiciary. Furthermore, we doubt if the legislature and people in adopting the "forestry amendment" gave any thought or consideration to imposing any limitation on the power of the legislature thereby other than the expressed one of limiting the amount of tax moneys which might be devoted to forestry purposes annually. We are, therefore, constrained to hold that the word *"preserving"* in sec. 10, art. VIII, Const., is merely a grant of power previously

denied to the legislature by the original wording of such section, and does not embrace any restriction on legislative power. Hence, ch. 404, Laws of 1955, is constitutional and valid.

The supplemental brief of plaintiffs cites *State ex rel. Sweet v. Cunningham* (1894), 88 Wis. 81, 57 N. W. 1119, 59 N. W. 503, as supporting their contention that state forest lands cannot legally be devoted to any other incompatible public purpose. In the *Sweet Case* it was held that sec. 2, art. X, Const., prohibits the legislature from setting aside lands belonging to the state school fund as a state park. However, sec. 2, art. X, expressly provides that such lands, and the proceeds thereof "shall be *exclusively applied* to" certain enumerated school purposes. The words *"exclusively applied"* impose an express restriction upon use not found in the "forestry amendment" to sec. 10, art. VIII. This readily distinguishes the *Sweet Case* from the case at bar.

While the acreage of state forest diverted to another purpose by ch. 404, Laws of 1955, represents but a tiny fraction of the total acreage of our state forests, not comprising a substantial portion thereof, this court is fully cognizant of the fact that our decision herein is not grounded upon such factor. We fully concur in plaintiffs' views that it would be a betrayal of the interests of the people if a diversion in use were attempted of any *substantial* portion of state forest lands, which would terminate their usefulness for forestry purposes. However, we are confident that such a substantial diversion and destruction of our state forests by legislative action is not within the realm of probability in the foreseeable future. Should it ever threaten, recourse must be had to an informed and aroused citizenry to prevent it, and not to the courts to impose a restriction on legislative power not found in our state constitution.

*By the Court.*—Order reversed, and cause remanded with directions to enter an order sustaining the demurrer to the complaint.