THE HONORABLE, THE SENATE, Legislature
By Senate Resolution No. 44 you request my opinion on two questions regarding 1973 Assembly Bill 1480. You ask (1) whether such bill is "legally before the Senate" and (2) "whether any law resulting from the enactment of 1973 Assembly Bill 1480 would be valid." Both questions are premised on the fact that the bill was passed by the Assembly and messaged to the Senate without referral to the Joint Survey Committee on Retirement Systems under sec. 13.50 (6), Stats.
By virtue of the adjournment provisions of 1973 enrolled joint resolution 4, Assembly Bill 1480 may be presumed to be adversely acted upon and, therefore, dead. Thus, the issues of whether the bill is now properly before the Senate and whether a law resulting from its enactment would be valid are moot. However, I consider the real issue raised — whether the failure of either branch of the legislature to follow statutory rules for legislative proceedings invalidates an otherwise validly enacted statute — is an issue proper for discussion and answer. It is for this reason that I have answered your inquiry.
Section 13.50 (6) (a) and (b), Stats., reads:
 "(6) POWERS AND DUTIES. The committee shall have the following powers and duties:
 "(a) No bill or amendment thereto creating or modifying any system for, or making any provision for, the retirement of or *Page 306 
payment of pensions to public officers or employes, shall be acted upon by the legislature until it has been referred to the joint survey committee on retirement systems and such committee has submitted a written report on the proposed bill. Such report shall pertain to the probable costs involved, the effect on the actuarial soundness of the retirement system and the desirability of such proposal as a matter of public policy.
 "(b) No bill or amendment thereto creating or modifying any system for the retirement of public employes shall be considered by either house until the written report required by par. (a) has been submitted to the chief clerk. Each such bill shall then be referred to a standing committee of the house in which introduced. The report of the joint survey committee shall be printed as an appendix to the bill and attached thereto as are amendments."
Clearly, Assembly Bill 1480 fits within the category of bills that are required to be sent to the Joint Survey Committee on Retirement Systems before consideration by either house. What then is the effect of one or both houses disregarding sec. 13.50
(6), Stats., and passing the bill without reference to the committee?
Article IV, sec. 8, Wis. Const., provides that "Each house may determine the rules of its own proceedings." While the two houses of the legislature have joined together to adopt a procedural rule by statute, sec. 13.50 (6), Stats., neither house is effectively bound to observe such rule.
The effect of disregarding a rule of procedure is summarized in Sutherland Statutory Construction, 4th Ed., Vol. 1, sec. 7.04 at p. 264:
 "The decisions are nearly unanimous in holding that an act cannot be declared invalid for failure of a house to observe its own rules. Courts will not inquire whether such rules have been observed in the passage of the act. Likewise, the legislature by statute or joint resolution cannot bind or restrict itself or its successors as to the procedure to be followed in the passage of legislation. In those jurisdictions where the enrolled bill is conclusive the rule is explained on the ground that the courts, as in other cases, will consider no evidence except the enrolled bill. *Page 307 
More generally applicable is the rule that the constitution having conferred this rule-making power on the legislature, excludes the court. The court without violating the separation-of-powers rule and the specific constitutional directions could not review the legislative act. The reason has been well stated by the Supreme Court of the United States in United States v. Ballin: `The constitution empowers each house to determine its rules of proceedings. It may not by its rules ignore constitutional restraints or violate fundamental rights, and there should be a reasonable relation between the mode or method of proceeding established by the rule and the result which is sought to be attained. But within these limitations all matters of method are open to the determination of the house, and it is no impeachment of the rule to say that some other way would be better, more accurate or even more just. It is no objection to the validity of a rule that a different one has been prescribed and in force for a length of time. The power to make rules is not one which once exercised is exhausted. It is a continuous power, always subject to be exercised by the house, and, within the limitations suggested, absolute and beyond the challenge of any other body or tribunal.'"
Section 13.50 (6), Stats., does not embody any constitutional requirement. Consequently, disregard of such section by one or both houses of the legislature is not violative of the fundamental law. The extent of legislative power and the role of the court in review of such power is stated in State ex rel.McCormack v. Foley (1962), 18 Wis.2d 274, 280-281,118 N.W.2d 211, in the words:
". . . This court has consistently held that the legislative power is not derived from either the state or federal constitution. The constitutional provisions are only limitations upon the legislative power. This court has uniformly approached the question as to the constitutionality of a legislative act on the basic principle that every presumption and intendment is in favor of the legislative act's validity. The rule is that it is the recognized duty of the court to sustain the act of the legislature unless it is clear beyond a reasonable doubt that it is violative of the fundamental law." *Page 308 
It is my view that sec. 13.50 (6), Stats., a rule of legislative procedure not mandated by the Constitution, is not binding upon the present or subsequent legislatures and cannot be the basis for invalidation of enactments resulting from contrary procedures. The Wisconsin Supreme Court at an early date adopted the proposition that legislative procedures, not in violation of constitutional requirements, are not reviewable by the courts. InMcDonald v. State (1891), 80 Wis. 407, 411-412, 50 N.W. 185, the court stated:
 "The courts will take judicial notice of the statute laws of the state, and to this end they will take like notice of the contents of the journals of the two houses of the legislature far enough to determine whether an act published as a law was actually passed by the respective houses in accordance with constitutional requirements. Further than this the courts will not go. When it appears that an act was so passed, no inquiry will be permitted to ascertain whether the two houses have or have not complied strictly with their own rules in their procedure upon the bill, intermediate its introduction and final passage. The presumption is conclusive that they have done so. We think no court has ever declared an act of the legislature void for non-compliance with the rules of procedure made by itself, or the respective branches thereof, and which it or they may change or suspend at will. If there are any such adjudications, we decline to follow them."
It must be noted that an argument could be made that the court inState ex rel. General Motors Corp. v. Oak Creek (1971), 49 Wis.2d 299,329, 182 N.W.2d 481, suggested that an alternative ground for holding the statute concerned therein unconstitutional was the legislature's failure to comply with the statutory mandates for enactment of such statute. I met this argument in a previous opinion, 60 OAG 245, and reaffirm the language from such opinion, p. 250-251, wherein I stated:
 ". . . In light of all of the circumstances, including the well established principles set forth above, as well as the presumption of constitutionality, I conclude that until the issue is squarely presented and argued to the court, this language should be regarded as obiter dictum." *Page 309 
In conclusion then, it is my opinion, based upon the above authorities, that the courts would consider the question of whether a bill such as 1973 Assembly Bill 1480 is legally before the Senate improper for their determination if the alleged illegality is that of failure to follow procedure set forth in the statutes. I further conclude that any law resulting from enactment of such a bill would enjoy the conclusive presumption of constitutionality and the courts would not look into the question of compliance with sec. 13.50 (6), Stats.
RWW:WMS